UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

```
IN RE:                          )
                                )    Chapter 7
RICK ALBER,                     )
                                )    Bankruptcy No. 05-05644
     Debtor.                    )
------------------------------  )
HABBO G. FOKKENA,               )
                                )
U.S. Trustee,                   )
                                )    Adversary No. 06-09077
     Plaintiff,                 )
                                )
vs.                             )
                                )
RICK ALBER                      )
                                )
     Defendant.                 )
```

**ORDER RE: COMPLAINT OBJECTING TO DISCHARGE**

The above captioned matter came before the undersigned on January 10, 2007. John F. Schmillen represented the U.S. Trustee. James T. Peters represented the Debtor. After presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

**STATEMENT OF THE CASE**

The U.S. Trustee's complaint asks the Court to deny Debtor's discharge pursuant to § 727(a)(2) and (a)(4). The U.S. Trustee claims that Debtor (1) concealed property from the estate by omitting assets from the property schedules on his bankruptcy petition and (2) knowingly and fraudulently made a false oath or account when he testified to the accuracy of his petition.

**FINDINGS OF FACT**

Debtor Rick Alber is currently employed as a school maintenance worker in Independence, Iowa. For six years he operated a farm with Jodie Puff. Debtor and Ms. Puff have three children together. They lived on the farm and shared in the family farm operations.

Debtor did not prosper as a farmer.  In 2004, he terminated his involvement in the farm operation and surrendered his interest in the land to Ms. Puff.  He surrendered his farming implements to his secured creditors.  In late summer of 2005, his relationship with Ms. Puff ended as well.  He moved out of their home and filed his Chapter 7 petition in October of 2005.

The U.S. Trustee brought this action alleging Debtor failed to make certain mandatory disclosures in his bankruptcy petition.  Debtor did not disclose that he had surrendered farm machinery to his secured creditors in the year prior to filing bankruptcy, and also failed to list a $45,127.48 debt that he owed to the local branch of BankIowa.  The U.S. Trustee also asserts that Debtor willfully concealed a $3,300 debt owed to him by Ms. Puff.  Based on these alleged omissions, the U.S. Trustee asks that Debtor's discharge be denied.

Debtor argues that grounds do not exist to deny the entry of the discharge.  He claims the first two omissions were innocent mistakes.  He disputes that he concealed any assets from the estate.

First, Debtor claims he did not mention the farm machinery in his financial statement because he did not receive any money when he surrendered the equipment to his secured creditors.  Because his creditors were entitled to possession of the machinery when Debtor defaulted on his payments, Debtor considered the machinery their property.  Debtor also testified that he was unsure whether he had surrendered the property within a year prior to filing bankruptcy.  He stated that his creditors may have repossessed the equipment more than a year before he filed.

Second, Debtor claims he did not mention the debt he owed to BankIowa because he did not intend, in his words, to "take bankrupt out on" BankIowa.  He testifed that he intended to pay the debt in full.  Shortly after filing his petition, he met with his loan officer at BankIowa, Dan Flaucher.  Debtor and Mr. Flaucher have known each other for about 20 years.  The two men negotiated a new payment plan, pursuant to which Debtor would pay $300 per month until the debt was paid in full.  Debtor has never missed a payment.[1]

---

[1]This meeting took place shortly after Debtor filed his petition and these payments have continued until the time of hearing.  Mr. Flaucher testified that while Debtor never told him about the bankruptcy, he was aware of it because he read about

Finally, Debtor claims that he did not conceal an alleged debt owed to him by Ms. Puff. He says Ms. Puff did not owe him any money; rather, she owed the $3,300 to BankIowa. The history of this alleged debt is somewhat curious. In October of 2000, Ms. Puff asked to borrow money from Debtor. To raise the funds Ms. Puff needed, Debtor sold a number of calves in which BankIowa had a perfected security interest. He then gave the proceeds to Ms. Puff. According to Debtor, Ms. Puff orally agreed to pay the $3,300 to the Bank instead of Debtor. In Debtor's words, "she owed the Bank, not me." Debtor states that he informed Mr. Flaucher of this arrangement, and that Mr. Flaucher had several conversations with Ms. Puff in which she acknowledged this debt. This type of arrangement apparently was not unusual in Debtor's interactions with the Bank. Mr. Flaucher referred to Debtor as a less than sophisticated businessman.

Ms. Puff never paid the debt, despite Debtor urging her to do so. In December, 2005, Ms. Puff approached Debtor and offered to pay the debt only if he would execute a note stating that she owed him the $3,300. She told Debtor that her banker required such a note. Ms. Puff then gave him a written statement and asked him to copy it verbatim in his own handwriting. The statement read: "Rick Alber says Jodie Puff owes him $3,300 from Oct 1 2000 to Date and wants to get paid right away by Jan 1, 2006." Debtor duly transcribed this message, had it notarized, and gave the note to Ms. Puff.

Once Ms. Puff received this note from Debtor, she contacted the Chapter 7 Trustee and conveyed the note to him. Trustee then sold this "account receivable" to Ms. Puff for $500, thereby allowing Ms. Puff to satisfy her $3,300 debt for less than one-sixth of its value. Concluding that Debtor had concealed a debt from the estate, Trustee initiated this adversary proceeding. Debtor maintains that he wanted the $3,300 to go to BankIowa, and that he never intended to conceal a personal asset from the estate.

---

Debtor's bankruptcy in the local paper around the same time he met with Debtor to renegotiate the loan. It does not appear that a reaffirmation agreement with BankIowa was executed or approved by this Court. Why Debtor would continue to make payments on an unsecured debt is not clear.

3

**CONCLUSIONS OF LAW**

11 U.S.C. § 727 states:

(a)   The court shall grant the debtor a discharge, unless -

. . .

   (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed

      (A) property of the debtor, within one year before the date of the filing of the petition

. . .

   (4) the debtor knowingly and fraudulently, in or in connection with the case -

      (A) made a false oath or account


**SECTION 727(a)(2)**

Section 727(a)(2) requires the U.S. Trustee to prove by a preponderance of the evidence that "(1) the act complained of was done within one year prior to the date of petition filing; (2) the act was that of the debtor; (3) it consisted of a transfer, removal, destruction or concealment of the debtor's property; and (4) it was done with an intent to hinder, delay, or defraud either a creditor or an officer of the estate." In re Korte, 262 B.R. 464, 472 (B.A.P. 8th Cir. 2001).

The U.S. Trustee claims that Debtor possessed and concealed property in the form of a $3,300 debt owed to him by Ms. Puff, and that he did so in order to defraud the estate. The evidence establishes that Debtor is a naive businessman. The Court accepts Debtor's testimony that he believed Ms. Puff owed this debt to BankIowa – not to him. The evidence shows that Mr. Flaucher, the loan officer at BankIowa, shared Debtor's understanding. Mr. Flaucher asked Ms. Puff to pay the $3,300 in several conversations he had with her, though it is clear from

4

Mr. Flaucher's testimony that he gladly would have accepted the $3,300 from either Ms. Puff or Debtor.

To decide this issue, it is not necessary to determine the legal validity of Ms. Puff's and Debtor's arrangement concerning the calves and the $3,300. Debtor's belief that the $3,300 was owed by Ms. Puff to BankIowa is the critical issue. If Debtor did not believe he was owed any money, he could not have formed the requisite intent to conceal property in order to hinder or defraud a creditor or the estate. In his mind, there was nothing to conceal. Based upon this record, the Court concludes that the evidence fails to establish grounds for denial of discharge pursuant to § 727(a)(2).

### SECTION 727(a)(4)(A)

Debtor swore to the accuracy of his bankruptcy schedules and statements at a November 21, 2005 § 341 meeting of creditors. The U.S. Trustee claims that when Debtor did so he made a false oath or account.

To prevail, the U.S. Trustee must prove that Debtor "knowingly and fraudulently, in or in connection with the case ... made a false oath or account." 11 U.S.C. 727(a)(4)(A). The U.S. Trustee must prove the following elements by a preponderance of the evidence: "(1) Debtor made a statement under oath; (2) that statement was false; (3) Debtor knew the statement was false; (4) Debtor made the statement with fraudulent intent; and (5) the statement related materially to Debtor's bankruptcy case." In re Sendecky, 283 B.R. 760, 763 (8th Cir. B.A.P. 2002) (preponderance of the evidence is the standard of proof in § 727 complaints); In re Gehl, 325 B.R. 269, 276 (Bankr. N.D. Iowa 2005).

Debtor has admitted certain inaccuracies in his schedules and statements. He claims that he did not know about them at the time he swore to the statement's accuracy, and that he lacked fraudulent intent. Having already concluded that Debtor lacked fraudulent intent as far as the $3,300 debt is concerned, the Court now turns to the issue of the farm machinery that Debtor surrendered to his secured creditors and the debt that Debtor owed to BankIowa.

For a false oath to bar a discharge, the false statement must be both material and made with intent. Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992); Korte, 262 B.R. at 474. Intent can be established by circumstantial evidence, and statements made with reckless indifference to the truth are regarded as

intentionally false. Korte, 262 B.R. at 474. As a debtor is not likely to admit fraudulent intent, the debtor's course of conduct and surrounding circumstances may also be considered. Gehl, 325 B.R. at 277.

Debtor admits that he surrendered several farm assets to his secured creditors. On his statement of financial affairs, he checked the box marked "none" when asked to list any property that had been repossessed within the previous year. In fact, it is unclear when these assets were repossessed. The U.S. Trustee relies upon Debtors' 2005 federal tax return, which lists the disposition of several assets, including a tractor and a combine; the tax return lists the disposition date of each item as January 1, 2005. Debtor claims the items were repossessed some time before that date, though he could not remember the exact dates of repossession. He testified that he is unsure whether the repossession occurred within a year of his filing.

As for the debt owed to BankIowa, Debtor claims that he omitted the Bank from his list of creditors, because he was under the impression that if he intended to make private arrangements with the Bank to repay the debt, he did not need to "take bankrupt out on" BankIowa by listing the Bank among his creditors. The U.S. Trustee notes that Debtor reaffirmed three other debts in his statement of intention, and he concludes that this "reflects Debtor's awareness of the correct procedure."

The Court finds Debtor did not act with fraudulent intent or reckless indifference. Having listened to Debtor's testimony, the Court finds his account to be credible. The evidence strongly suggests Debtor is an extremely unsophisticated businessman who has a poor grasp of what he was required to disclose on his statements. The Court finds that Debtor believed he was not required to disclose his debt to BankIowa due to the private arrangement he had made with Mr. Flaucher, with whom Debtor had a longstanding relationship.

It is true that Debtor affirmed three other debts on his statement of intention. While Debtor's exact reasons for doing so remain somewhat elusive, it appears that he distinguished the BankIowa debt from the others because the BankIowa debt was unsecured and because of his close relationship with Mr. Flaucher. Two of the debts listed on Debtor's statement of intention to be reaffirmed were secured debts, including a car loan. It appears that Debtor disclosed these two debts because he intended to retain the secured property – although it remains unclear why Debtor listed the third, an unsecured debt that Debtor paid off in its entirety shortly after filing.

The Court further concludes that Debtor simply did not remember to mention the farm machinery that he had surrendered to his secured creditors. These omissions were inappropriate, but the evidence – including Debtor's testimony and the fact that Debtor had no apparent motive to lie – suggests Debtor did not make them knowingly. The Court concludes that the U.S. Trustee has not shown by a preponderance of the evidence that Debtor knew his statements were false.

Nor has the U.S. Trustee shown by a preponderance of the evidence that Debtor made these statements with fraudulent intent. Significantly, it is obvious that Debtor had no motive to deceive. Debtor did not receive any money when he allowed his farm implements to be repossessed, and none of his other creditors were harmed. Further, as Debtor's counsel notes, Debtor was "the only person harmed" when he did not disclose his debt to BankIowa. Given that his debt to BankIowa would have been discharged in bankruptcy, Debtor stood to gain more personally if he had disclosed the debt. While lack of motive is not dispositive, it is circumstantial evidence that Debtor lacked intent to defraud the estate. The Court finds that Debtor's omissions were not made with an intent to defraud or deceive.

**WHEREFORE**, the U.S. Trustee's Complaint Objecting to Discharge is DENIED.

**FURTHER**, the U.S. Trustee has not proved all the elements of 11 U.S.C. §§ 727(a)(2) and (a)(4) by a preponderance of the evidence.

**FURTHER**, judgment shall enter accordingly.

Dated and Entered:

February 6, 2007

_____
Paul J. Kilburg
Bankruptcy Judge